UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Ferris Gieger Singley, Jr., | ) | C/A No. 4:10-782-JMC-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| | ) | |
| Dr. Sampson; Warden Robert | ) | |
| Stevenson; Nurse L. Corley; | ) | |
| Nurse Starr Conley; and Nurse | ) | |
| Karen McCullough, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Ferris Singley, filed this action on March 30, 2010, alleging various claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] The plaintiff is an inmate currently housed at the Broad River Correctional Institution ("BRCI"). Before the undersigned is the defendants' motion for summary judgment. (Doc. # 31.)[2]

The defendants filed a motion for summary judgment on December 6, 2010, along with a memorandum and exhibits in support of the motion. (Doc. #39.) Because the plaintiff is proceeding pro se, he was advised on or about December 29, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of the procedure for summary judgment and the possible

---

[1]The plaintiff filed an Amended Complaint on September 28, 2010. (Doc. #30.)

[2]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

1

consequences if he failed to respond adequately. (Doc. # 41.)  The plaintiff filed a response opposing the defendants' motion on February 7, 2011. (Doc. #44.)

## II. DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the

fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## B. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges the defendants have been deliberately indifferent to his serious medical needs. In his Complaint and Amended Complaint, the plaintiff alleges that in September 2009, while he was climbing down from the top of the sink in his cell, he fell backwards landing with all of his weight on his right hand. (Compl. and Am. Compl.) The plaintiff alleges he submitted a sick call request seeking treatment for his hand injury that night and two days later he was seen by the

nurses and sent to the hospital for x-rays. The plaintiff alleges that a doctor never saw him for his injuries.

In his Amended Complaint, the plaintiff claims that he still has problems with his right hand and wrist and that he wants a wrap for his wrist to alleviate the pain. The plaintiff further alleges that since June 10, 2010, a doctor has not seen him for any of his other medical complaints, including lower back pain and pain in the left leg and hip, and that the nurses have not entered all of his complaints in the computer medical records. He is seeking an order requiring the South Carolina Department of Corrections ("SCDC") to schedule an appointment for him to see a doctor other than the defendant Dr. Sampson, placement in the general inmate population, and a transfer to another correctional institution because he alleges Dr. Sampson is going to be biased against the plaintiff due to the plaintiff filing this action. The plaintiff is also seeking actual damages for pain and suffering.

## C. ANALYSIS[3]

**Deliberate Indifference to Serious Medical Needs**

The plaintiff alleges the defendants have failed to provide him with medical treatment on several occasions.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. Id. The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. Id. at 104.

Deliberate indifference is a very high standard. In Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental

---

[3]As an initial matter, the undersigned notes that the plaintiff's request for relief for a judicially mandated transfer to another institution or placement in the general inmate population is simply not within the power of this Court to grant. The placement and assignment of inmates into particular institutions by state corrections departments are discretionary functions, and are not subject to review unless state or federal law places limitations on official discretion. Hayes v. Thompson, 726 F.2d 1015, 1016-17 & n. 1 (4th Cir. 1984) (collecting cases). See also McKune v. Lile, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"). Furthermore, there is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. See Olim v. Wakinekona, 461 U.S. 238 (1983); Ange v. Paderick, 521 F.2d 1066 (4th Cir. 1975).

fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, 429 U.S. 104; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" Coppage v. Mann, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (internal citations omitted)

Furthermore, the Fourth Circuit has held that to bring a denial of medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier, 896 F.2d 848. Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id.

Under these principles, the plaintiff has not alleged facts stating any claim actionable under § 1983 regarding his medical treatment against the defendant, Warden Stevenson, who is not medical personnel. Additionally, in a §1983 action, there is no respondeat superior liability. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). "Instead, liability is personal, based upon each defendant's own constitutional violations." Id. at 402. (holding that plaintiff's suit failed because there was no allegation that any of the defendants were personally involved in the unconstitutional conduct). A bare allegation that someone in a supervisory authority has violated a plaintiff's constitutional rights without any personal contact with the plaintiff, is not sufficient to state a § 1983

claim. See Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 38 (8th Cir. 1995) (reasoning that "[t]he general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability"). The plaintiff has not made any allegations that Warden Stevenson was personally involved in the any unconstitutional conduct regarding the plaintiff's medical care. Accordingly, the defendant Warden Stevenson should be granted summary judgment on the plaintiff's claims of medical indifference.

As to the other defendants, there is no evidence in the record that they were aware that the plaintiff needed medical attention and denied him such. The plaintiff alleges that he fell on September 25, 2009, at approximately 5:30 p.m. and injured his right wrist  He alleges he immediately told the guards he needed medical attention and they told him to put in a sick call request which he states he did later that night. The plaintiff's medical records show that on September 27, 2009, the plaintiff was examined by a nurse who noted that the plaintiff's pad of his hand was purple and swollen near the index finger, but the plaintiff was able to move his fingers, had a good radial pulse to the right wrist, and there was no swelling or discoloration to the wrist. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 3 at 19.)  The plaintiff's hand was wrapped in an ace bandage and he was given ibuprofen, he was told to elevate and ice his hand, and that he would be re-checked in 24 hours. Id. The nurses re-examined the plaintiff's hand on September 28, 2009. Id. at 15.  That same day, the plaintiff was sent for an x-ray which showed no fractures. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 3 at 20.)

The plaintiff also alleges that he complained of back pain on June 24, 2010, and it was not until August 12, 2010, that he was given an appointment with Dr. Sampson. The plaintiff's medical records show that the plaintiff was seen by a nurse on June 24, 2010, complaining of chronic lower

back pain. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 3 at 8.)   His physical examination was unremarkable except for a finding of muscle spasms in his upper back. Id.  He was given instructions on how to alleviate lower back pain and he was also given Tylenol and Chlorzoxazone, a muscle relaxer. Id. On July 15, 2010, he was seen by a nurse again complaining of back pain and a foot fungus. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 3 at 6-7.) His physical examination was again unremarkable except for revealing muscle spasms in his back and a foot fungus. Id. at 7. He was again instructed on how to alleviate back pain and also instructed on how to care for his feet to prevent foot fungus. Id. He was told to take acetominophen or ibuprofen and given Chlorzoxazone and medication for his foot fungus. Id.

On August 5, 2010, the plaintiff was again seen by a nurse complaining that his hip and leg still hurt and his athlete's foot had returned. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 3 at 6.) His physical examination was unremarkable except for noting that the plaintiff's feet were red and scaly. Id.  He was told to take acetaminophen or ibuprofen for pain, the Chlorzoxazone if he experienced muscle spasms, and Lotrimin for his feet. Id.  He was also instructed on how to alleviate his back discomfort and care for his feet.  It was noted that the plaintiff was requesting Lamisil for his foot fungus and the renewal of several other prescription drugs, including saline nasal spray, Zocor, and PC tar shampoo. Dr. Sampson reviewed the plaintiff's medical encounter with the nurse, and renewed the plaintiff's prescriptions and scheduled him for an appointment to evaluate his leg, hip, and lower back pain. Id.

In regard to the plaintiff's wrist injury, it is undisputed that the nursing staff examined the plaintiff, and the plaintiff's hand was x-rayed.[4] Likewise, as to the plaintiff's complaints regarding his back pain and foot fungus, the plaintiff was seen by the nursing staff. The plaintiff, however, seems to be concerned that Dr. Sampson did not immediately examine him for these conditions. (Pl.'s Mem. Opp. Summ. J. Mot. at 3.) However, the plaintiff's argument that Dr. Sampson failed to personally examine or treat the plaintiff does not support a claim of deliberate indifference.

> [T]here is no per se requirement that a jail provide its inmates around-the-clock access to a medical doctor. While jailers are ultimately responsible for their inmates' medical needs, they can provide that care in a variety of ways, including access to trained personnel such as guards in the first instance, nurses, and physicians' assistants. . . . While access to a medical doctor may be necessary in certain situations, no constitutional violation occurs unless medical care is intentionally or recklessly denied.

Boyett v. County of Washington, 282 Fed. Appx. 667, 673-74 (10th Cir. 2008) (unpublished). Accordingly, an inmate has no per se constitutional right to treatment by a physician rather than a nurse. Id.

Furthermore, the plaintiff's medical records clearly establish that the plaintiff has received medical treatment for his wrist injury, albeit not the treatment he deems he should have received. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 3.) His hand was x-rayed and the x-ray showed no fractures. Likewise, as to the plaintiff's allegations regarding his back pain and foot fungus, the plaintiff has not shown the defendants were deliberately indifferent to his medical needs. The plaintiff's medical records show that he was treated with the prescription of Lotrimin, and his

---

[4]It appears that the nursing staff relayed information regarding the plaintiff's injury to Dr. Sampson who ordered the plaintiff's hand be x-rayed. (Affidavit of Dr. Donald R. Sampson, Defs.' Mem. Supp. Summ. J. Mot., Doc. #39, Exhibit A.)

complaints regarding back pain were treated with a muscle relaxer and pain medication (acetaminophen or Tylenol and Ibuprofen or Motrin) and advised by the nurses of ways to alleviate the pain.

Although the plaintiff would rather have been prescribed a bandage for his wrist and different medication for his foot fungus and he alleges his back pain continued, these allegations do not support a medical indifference claim. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir.1988). The plaintiff's allegations rise only to a level of mere disagreement over the treatment he was offered, which is not an actionable constitutional claim. He has offered no proof that he has not been provided adequate medical treatment, nor has he shown deliberate indifference on the part of the defendants. See Estelle, 429 U.S. at 104 (stating that prison officials evince deliberate indifference to a serious medical need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care); Miltier, 896 F.2d at 851 (noting that deliberate indifference may be demonstrated by actual intent or reckless disregard but that mere negligence or medical malpractice does not suffice).

At most, there was a short delay in treating the plaintiff for his wrist injury.[5] However, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place

---

[5] The plaintiff's allegations that he waited 49 days for treatment in regard to his back pain and foot fungus are premised on the plaintiff not seeing Dr. Sampson. (Pl.'s Mem. Opp. Summ. J. Mot. at 5-6.) However, it is undisputed that the plaintiff saw the nurses and was treated for these conditions during those 49 days and, as noted above, the plaintiff cannot allege a medical indifference claim solely based upon his inability to see a doctor when he was being treated by other medical personnel.

verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188 (11th Cir.1994). As stated above, a medical need is serious if a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F.Supp. at 1037. See also Webb v. Hamidulla, 281 Fed.Appx. 159 (4th Cir. 2008) (unpublished) (holding an Eighth Amendment violation only occurs if the delay results in some substantial harm to the inmate.) The plaintiff has failed to allege how any such delay in his treatment resulted in a detrimental effect or has caused him a life-long handicap or permanent loss.

Part of the plaintiff's complaints appear to stem from his frustration over the inability to cure his chronic lower back pain, but without more this fails to establish a constitutional violation . See, e.g., Armour v. Herman, No.2005 WL 2977761, at *3 (N.D.Ind. Nov. 4, 2005) (holding "[t]he Eighth Amendment does not require medical success. . . ."); Ramos v. Artuz, 2003 WL 342347, at *9 (S.D.N.Y. Feb.14, 2003) (indicating that an unsuccessful course of treatment does not support a finding of deliberate indifference); see also Moolenaar v. Champagne, 2006 WL 2795339, at *7 (N.D.N.Y. Sept.26, 2006) (holding plaintiff's complaints of pain resulting from degenerative disc disease, a chronic ailment sustained by many individuals and treated with exercise, pain medication, and physical therapy, with which plaintiff was treated, did not give rise to a valid deliberate indifference claim).

Finally, the plaintiff also fails to establish a constitutional claim regarding his medical treatment against any of the defendants because he has not shown any serious or significant physical or emotional injury resulting from the alleged inadequate medical attention. See Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir.1993). Further, the PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit has held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997) (concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F.Supp. 1318 (S.D. Ind. 1997) (finding exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA).

Here, viewing the evidence in the light most favorable to the plaintiff, the Court simply cannot find that the defendants' treatment of the plaintiff was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Estelle, 429 U.S. at 105. Even taking all of the plaintiff's allegations in the instant Complaint and Amended Complaint as true, it is clear that no relief could be granted under any set of facts that could be proved consistent with those allegations. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Accordingly, the defendants should be granted summary judgment on the plaintiff's medical indifference claims.

**Claims Regarding Grievances**

The plaintiff also alleges that the defendants on many occasions have refused to process his grievances. This bare allegation, even accepted as true, fails to state a plausible claim for violation of any constitutional right. The law is well-settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-138 (1977).

Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"); *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983); *Doans v. Rice,* 831 F.2d 1057 (4th Cir.1987). Thus, even if the defendants failed to timely respond to, or process plaintiff's grievances, the plaintiff has not stated a constitutional claim.

### D. QUALIFIED IMMUNITY

The defendants argue they are entitled to qualified immunity. Although the burden of showing immunity remains on the defendant, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a

valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, all of the defendants are entitled to qualified immunity in their individual

capacity. Thus, the undersigned recommends that summary judgment be granted as to the defendants.

### E. PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III.  CONCLUSION

Based on the above reasoning, it is RECOMMENDED that the defendants' motion for summary judgment (doc. #39) be GRANTED.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 30, 2011
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

15